Good morning, Your Honors. My name is Deputy Public Defender William Ronnick with the Riverside County Public Defender's Office, here today representing Mr. Wright. Earlier this week, this Court issued an order outlining several issues to be addressed at oral argument, and I'll just start with the first one. I don't think that those are the principal issues. That was in addition to the other basic issues, so you don't have to start with that. But I think it's a good jumping off point anyway, so I'll start there. The first question this Court asked was whether the state court's collateral estoppel determination was a matter of state substantive law or state procedural law. And I want to start there because I think there's sort of a misunderstanding or a misdirection inherent in the wording of the question itself. It assumes that there was a collateral estoppel determination made in this case. And what Mr. Wright's always argued from the outset is that there was never such a determination. Rather, in this case, the trial court at the 2005 hearing on the SPP petition decreed a collateral estoppel basically by fiat. Well, that was appealed to the state court of appeal. And we look at the last reasoned decision, and that's the last reasoned decision, which rests its ground on – rests its holding on two bases. One, they said there was circumstantial evidence that he was convicted in 60 – is it 68? And two, that collateral estoppel applied. Correct, Your Honor. So that's the question. Why was that a substantive ruling or a procedural ruling? Well, as far as it being collateral estoppel, whether it was substantial or procedural, I guess I can jump into that and say it's a matter of state procedural law in the sense that it's best characterized as a barrier to an adjudication on the merits, a fair adjudication. Well, wasn't it the way – but wasn't it an alternative way of proving a fact that was an issue? Sure. But in order to do that, you have to meet certain threshold requirements, you know, to ensure that that lower – the initial first proceeding, that the person in that had a full and fair opportunity to litigate that matter. And that didn't happen here because there was a withholding by the prosecution of – it was the 1968 docket sheet that they didn't turn over until the outset of the 2005 proceeding. Well, so the – what was the scenario? He goes back to court in 2005 and the petition is – Correct. That was the third SEP petition. And at that point, the prosecution turned over a docket sheet that went from 1968 to 1975. But that was a public record though, correct? It was public. Why would you have to rely on – Right. But remember, in this case, the burden is on the prosecution to prove beyond a reasonable doubt the existence of that predicate prior. So in those earlier proceedings – Wasn't it in 99-0 that he admitted? That was the first – He appeared for a colloquy in the first petition? He made an admission to doing certain acts. He never admitted to any conviction. And I think it's interesting that he made the admission to certain facts because that's how the prosecution framed it. They asked, did you do certain things? It's interesting to note that they didn't frame it in terms of were you convicted in 1968 of this offense. And I think the reason they did that, a reasonable inference from that, is that they had that record. Well, would it have been insufficient for the court in 99 to simply rely on the acts? He had to have found a conviction, correct? Correct. A conviction is required. And remember, this wasn't a trial. This was a plea bargain. That's correct. I recall. And I think it might be constructive to look at the analogous criminal context where this court in 1995 in Sanchez v. United States held that in the criminal context, in a plea bargain where the prosecution withholds evidence that disproves a necessary element, that plea cannot – is not voluntary, knowing or intelligent because of that withholding. So if it's, let me ask you this, if it's a procedural rule, and I'm not sure that it is, but let's just assume that it is, there are other hurdles you have to overcome, correct? Correct. It's the threshold requirements you have to overcome. Is that what you're referring to? Well, adequacy and other. Right. Well, oh, I understand. In the context of habeas corpus. Right. Is it an independent, inadequate state ground? Right. And we would maintain that it's an inadequate state ground. And the reason is, if you look at the case that first established collateral estoppel in the context of a predicate prior, and it's mentioned in the briefing, it's People v. Munoz, that case came out in May of 2005. So just a few months before the hearing on the third SVP petition. But the key dates there are the 1999 and 2000 dates. The dates of the first two SVP petitions. Because at that time, Mr. Wright's counsel didn't have any notice that making an application for collateral estoppel was part of collateral estoppel. And that rule has been around for years in California. Right. But as applied to SVP petitions, it's relatively new. The SVP, these petitions are treated as civil matters, correct? Right. That rule has been around forever. But not, collateral estoppel itself has been around forever, but not whether it's how it was applied to in the SVP context. That didn't happen. So let me ask you this. So let's assume you can get over these hurdles. What's the constitutional, the federal constitutional violation you're seeking to vindicate? A due process right. And that comes through Hicks v. Oklahoma. The state of California set up certain procedures for an SVP determination, including a requirement at the time of two predicate prior convictions. Once the state set up that, those procedural requirements, Mr. Wright had a due process right to have the state adhere to its own requirements. And it didn't do that here. So we're talking about a due process violation. Right. Now, if we were to conclude that collateral estoppel here is a substantive rule of California law, what's the analysis then? Do you lose? I don't think we lose. We lose, no, because there's a fundamental injustice happens here because it's a miscarriage of justice, the fact that there was this docket sheet withheld, and Mr. Wright never had an opportunity to have a full and fair hearing because of that. And it's important to note that at the 2005 trial, Mr. Wright's trial counsel repeatedly asked the court to look at those threshold factors. Had it been actually litigated in the prior proceedings? Has it been necessarily decided? Was it even the exact same prior? And the judge, it's not that he addressed those issues and decided wrongly. He flat out refused to consider those issues and just said, as I said, by fiat, it's collateral estoppel. And that's where the due process problem comes in because it's those threshold factors that the court needs to look at that ensure that due process is protected. And if the court doesn't look at it, there's no due process protection. Aren't you just arguing that California misapplied its collateral estoppel ruling? In this case, yes, and egregiously so. How can we look at – we can't act as a state appellate court. No, but what you can do is where the court refuses to apply its own law, and I believe that's Allen v. McCready, where state procedural law, though adequate in theory, is inadequate in practice. And here, that's exactly what happened. And perhaps it's because it's in the SVP context that the courts are in a rush to find an SVP determination without fully considering the rights of parties involved. What's his status today? He's still institutionalized at Atascadero State. Now, the law has changed somewhat, hasn't it? Yes. It only takes one prior. One prior right. Has anything – has the State taken any action just to proceed on the basis of one prior? Right. They did have one further SVP petition hearing on that, and since then it's been in a holding position, basically awaiting the outcome of the lawsuit. But what would happen if you won here, and then the State has a petition to commit them based on one offense? Well, I think if you were to win here, then I think the important date is the original SVP petition, which was 1999. And at that time, there was only a two-predicate prior. Now, they can't subsequently come back and say, well, now we're going to reanalyze this on a one-petition basis because it's been – he would have otherwise been released and he wouldn't have been subject to an SVP petition. An SVP petition follows immediately after incarceration. So he would have been out back in 1999. And you say they now can't bring a petition under the new statute? Right. That would be our contention. Because it has to be brought immediately after a release or immediately after the time expires for his detention following a conviction? Right. So it would have either been dismissed in 1999, if the docket sheet had been provided at that time, or dismissed in 2005. Well, what happens if it were dismissed? The current petition were dismissed or had been dismissed. Does that mean when the law changed so that there was only one required, that that couldn't be retroactive? Right. He would have to reoffend in order for a new SVP petition. Under the new law. Right. I thought there was a reason. There was an opinion that said that under the new law, the state could attempt to meet the standards of the new law. I'm not aware of that opinion. Maybe it's the one I'm thinking of where the court said that in a new determination that it's not even new. It's actually in the statute. It's what was changed by the proposition that said that any new petition becomes indefinite. Now, in this case, for an indefinite period. Now, in this case, the prosecution has already tried to apply that retroactively and say that the 1999 and 2001 petitions were for indefinite commitments. And the court initially granted that. They have to prove that. Right. Well, the trial court initially did allow that. But then a subsequent case, a different case, went through the state courts and held that they couldn't do that, that that was an ex post facto violation. So then they had to go back and basically change it so that now he's just now it's only the current one that's indefinite, not the past one. Now, the other main issue is whether it was an unreasonable finding of fact. Correct. To say that he had been convicted. Why isn't it at least ambiguous whether he had been convicted? Well, to say, I think you answered your own question when you said why isn't it at least ambiguous, because it has to be found beyond a reasonable doubt. Ambiguity and beyond a reasonable doubt are not really compatible terms. No, no. Well, they are in the sense that the state court could decide that it was beyond a reasonable doubt. And we have to say that that would be an unreasonable finding of fact. If you look at the actual transcript, though, the state court never made that determination, the state trial court. Now, the state court of appeal assumed they did. But if you look at the record, all the judge did in that case, the 2005 trial court judge did, is say that he's throwing out some ideas for a tentative opinion and then discuss, oh, possibly this related to a dismissal of the NDSO, the commitment rather than the underlying offense, and I'm talking about the 1968 prior now, and the 1975 dismissal. But that was just speculation. And that was on August 30th, 2005. It wasn't until the next day, August 31st, that he made his actual order. And that order is clearly premised only on collateral estoppel. And again, he didn't do the analysis to get the collateral estoppel. He just decreed it. All right. We've got two minutes left for rebuttal. I'll reserve that for a moment. Thank you, Your Honor. Good morning, Your Honors. Deputy Attorney General Jennifer Jadovitz for appellant. I'll go in the same order that opposing counsel. Well, I just want to ask, what evidence is there that he was convicted in 1968? I think that's circumstantial evidence that was presented at the hearing on the motion to dismiss in the 2005 proceeding. It was the documents of all the records that the prosecution was able to get from San Francisco District Court. And I think that's circumstantial evidence that he was convicted. He had been committed as an MDSO. And that was premised on the fact that he was convicted. There was also evidence that he was convicted. But isn't it inherently inconsistent to dismiss a prosecution on speedy trial grounds and to find a conviction? But that's the problem with that notation on that document, Your Honor, is as the district court pointed out, I think he used the word, it's an obtuse notation. And I would agree with you that that would seem logically inconsistent. But the point is we don't know that that's for sure what happened. What we have to assume here is back in 1968 that the trial court knew what it was doing, followed the law, and didn't commence MDSO proceedings without having obtained the plea. It's unfortunate that the word conviction perhaps doesn't appear on that document. Kennedy. Let me ask you a question about what Judge Wardle asked you about. When it says that they dismissed for lack of speedy trial, it appears that that was the sentencing proceedings that was dismissed. Would that be, can you dismiss a sentencing delay if there's an unreasonable delay in sentencing? Because they say it was set for sentencing on that date. And then instead of sentencing, they dismissed it for lack of speedy trial. Does that mean, I mean, I don't know. What's your answer to the question of whether a dismissal for lack of speedy trial can occur if the conviction was timely, but the sentencing is unreasonably delayed? I don't have a citable case for that answer, but I have some logic to offer. In other words, what happened in 1975 is he's returned to the court for sentencing on necessarily the conviction that was found that was the precedent for the MDSO proceeding. Now, it doesn't, as Justice Wardle pointed out, it doesn't make sense to be ---- It's Judge Wardle. Excuse me. Judge Wardle pointed out it would be illogical to dismiss a conviction, a lack of, excuse me, for a lack of speedy trial conviction that was already been had. So when he's returned for sentencing, which makes logical sense in 1975, what's, as the trial court, I believe, inferred from this, what was dismissed, and if you note on the paperwork there, I believe, too, it says dismissed, but then that's crossed out, and then they write the word discharged. The inference necessarily could be is that what he's discharged from is, and I don't know how to measure this up against the words, you know, dismissed for lack of speedy trial. He's discharged from the MDSO proceeding because at that point he's no longer found to be dangerous and amenable, so he was given, you could infer that he's given credit for the time served for the commitment, the seven years, and he's discharged because the court's no longer going to sentence him, which is one of, I think it's under In re Beville, or Beville, which is the SVP law at that time that says once you've served your time under the MDSO commitment, when you go back for sentencing on the underlying conviction, the court can, you get credit for that time served in the MDSO commitment to any sentence that would be imposed on the criminal conviction. He got credit. He had received credit and then was discharged. And that's true. So that doesn't make any sense. Well, just trying to make inferences of what should have happened, and I understand that, that it doesn't say that. Well, can you be committed as an MDSO both for 90 days observation and for an indeterminate period unless, without having been convicted of the second crime? Well, back in 1968, if we focus on that moment, I believe at that point, I don't know that he had to have two convictions. He just had to have one conviction. And you can't, you couldn't, the court, my understanding under Beville is that he couldn't, the court, trial court could not have instituted MDSO proceedings without the underlying conviction. And that's the logic that the courts are using. But he was, the first time on October 14th, 68, he was only sent off for observation to determine whether or not he was within the category, potential category of an MDSO. Correct. And then he was going to come back to the court for further, for evaluation of what did they find at Tescadero on the 90-day observation period. That's pretty standard for my days when I was, when I used to do this. From my understanding, that's correct, Your Honor. I think what happened is, so in October, he's sent for 90 days. Ninety days later, which I think would have been January, he comes back. Now they institute actual MDSO proceedings. Right. But that point, that point there is where there shouldn't, what this minute order should have reflected if it had happened is that he pled guilty, or somehow or other he's convicted, or something happens to show a conviction. I see what they're talking about. And instead, he, they just send him off. You know, these things happen awfully fast in the courts. And they, it probably was just an oversight. Well, could they have, I think I'm asking the same question Judge Wardle asked. On January 13th, when he came back after the psychiatric observation, could they have sent him for an indefinite period under the law if he hadn't been convicted? Absolutely not. Okay. So that's the logical. My question, that is my question. So why isn't there a document of conviction? We have all this, we have, there's this, another proceeding where the juror sends out a question, was he convicted, and the judge says, yes, he was convicted in 1968. The subsequent, I don't remember which year it was. But what is he basing that on? I mean, there has to be some record of conviction. That's an interesting question, Your Honor, because I was looking at that this morning, and I'm wondering why the jury's question prompted the court to answer the way it did. Because the jury wasn't asking about a specific prior conviction. It was just asking what's the difference between a conviction in a court of law versus his admissions to the crime to a doctor. That referenced nothing to any of the, you know, one particular of the prior. So I'm not sure how to answer that question. Once again, however, this kind of all brings us back, though, to the point, if I may, address the court's inquiry as opposing counsel started out with, with this notion of the trial court in this particular proceeding finding that the matter was necessarily collaterally a stop. And I want to back up, if I may. I want to point out that there seems to be actually a dual use of terms by both the trial court, the court, and the court of appeal in this case. And that is the notion of raised judicata and collateral estoppel. If you look, and I'm sorry I don't have the specific citation to the record, but I believe that the trial court in this case used both terms and then looked back to what happened in 1999 and in 2001 and said because that issue was litigated in those prior proceedings, I can't go around them. I believe that was his particular word. So it's necessarily collaterally a stop. Now move forward to the court of appeals decision in this case, and you have them citing, in order to dispose of this issue, they cite to the case of People v. Munoz what says a fact that is litigated in a prior proceeding in an SVP context is raised judicata in later SVP proceedings. Now, and I think the terminology is that might be a difference without a distinction, but the result is the same. Now, speaking with respect to the court's question as to whether the State's rule is substantive or procedural, the people would argue that it's a substantive rule. And if I may interrupt myself and with the court's permission, I filed yesterday in a 28-J letter another authority that kind of puts this all together. And I don't know if the court got it, and I called Mr. Maronick yesterday to advise him of that. And that's the United States Supreme Court case of federated department stores versus, I can't pronounce it, Mioti. And it's a case from 1981 that talks about res judicata. And I think that's applicable in light of the dual use of the terms in these proceedings. And that talks about how with respect to res judicata, the doctrine is not a mere matter of practice or procedure, but it's a fundamental and it's a rule of fundamental and substantial justice. So that speaks to the notion that if we're going to look at res judicata and collateral estoppel kind of on equal footing here, it's a substantive rule. And another reason it's substantive, because this is not a situation where Mr. Wright was prevented from doing and following a procedure. What happened is, is it wasn't until this 2005 hearing that he decided to challenge the existence of the 1968 conviction, and he was allowed to raise that, and he did. But what the courts said, the trial court and the court of appeals said, that is a matter of fact that's been already litigated in two prior proceedings, and therefore we're not going to do it. Roberts. Let me ask you this. Under 2254d2, the Petitioner can argue there's been an unreasonable determination of the facts. And if collateral estoppel is a substantive rule of law in California, I assume that there would have to be some predicate factual showing, correct? I'm not sure if I have. Well, so there has to be, there are some predicate facts that lead you to the conclusion that the fact in dispute should be collateral. The party should be a stop from trying to deny that fact, right? So in other words, it had to have been raised, it had to be an identical issue, it had to have been fairly litigated, and there had to be a determination. Correct. Okay. So if you look back at what happened in 99 and in 2001, he didn't admit to a conviction. He admitted to the facts. I think that that's fair game for purposes of collateral estoppel, Your Honor, because he's in the court of law. Now, in 1999, he's in the court of law. He's admitting that he admitted all the elements of the SVP. He admitted he had the prior. You know, at the end of that transcript, it's very interesting. The prosecuting attorney, whoever it was, a DA or I don't know who was the prosecutor, she says, you know, should I lay a record? Should I set forth the elements of what he's admitted to and whatnot? And she very carefully just says the factual predicates, the factual that he was involved in the incident and whatnot. She doesn't herself say that he was convicted in 1968, which I thought was really interesting. Why? I mean, she was being very careful. I'm not sure how to interpret that.  The prosecutor apparently didn't use the magic words, were you convicted? But the trial court certainly informed Mr. Wright at that 1999 hearing that he was going to be admitting that he had two prior convictions. I don't know if that's splitting hairs with respect to the issue or not. And if I may, I think I have the citation in the excerpts of records for you. It would be tab 13 and going in line with the page numbers where the court said, you heard what your attorneys, it's page 2, have told me about what you plan on for your case today. You're going to waive the probable cause hearing, waive a jury trial, admit to the petition, at least the first two elements mentioned, and that first element, that you've been convicted on two prior occasions for what we call a qualifying offense. So. And did he respond to that? I'm sorry. I just lost my page. Is that correct? Respondent, true. Excuse me. Yes, sir. That would be on page 3. So, I mean, at least he was on notice of what he was going to be admitted to. Now, in 2001, he doesn't even show up. He doesn't. Once again, he waives everything and admits to his petition. It's all done on paper. Exactly. And I'm not sure what that means with respect to, I understand the concept of litigation, but then to be able to say that, to go and admit, essentially making them, admit the elements of offense and making it a non-issue, but then come back six years later and say, oh, I changed my mind. I wasn't convicted in 1968. Does California's collateral estoppel law apply to circumstances where somebody could have litigated but didn't? I'm not sure, Your Honor, to be quite honest. But with respect to your question in relation to, once again, the people's assertion that it's substantive, is whether it's, excuse me, independent and adequate, absolutely. This is a situation where this collateral estoppel and or raised judicata, if you will, has been applied for years in SVP-type proceedings. And it's not part of the excerpts of record, but in the respondent's brief that was lodged in the district court as item number four, we cited to several cases that where collateral estoppel applied in MDSO, excuse me, MDSO proceedings to support the court's finding here, which it's been applied. And it's established since 1993. Now, the MDSO was the prior SVP-type of hearing. So there's absolutely no question with regards to whether it's adequate and has been firmly established and regularly applied. Is he still in a taskadero? Actually, with all due respect to respondent, my understanding is that he's actually in Kalinga. He was transferred. He's in another hospital still? He's still in the system, but I believe it's Kalinga, not a taskadero. But I could be wrong. But he's entitled to a new hearing? Well, that's the interesting question. With respect to the new law, and now it's one predicate prior, and you get an indeterminate Under the old law, it was every two years the people had to file a petition for recommitment. That's no longer the situation, as I understand the new law. It's a situation where now when it's one predicate prior, you have an indeterminate sentence, but it's up to the petitioner to petition to get out and be reevaluated. It's not up to the people anymore. So the people do have a pending petition that stayed pending this? That's what I understood from the opposing counsel. I don't have an answer for that question. So it's up to him now if we were to affirm the district court here. It would be up to him to file a new petition. I thought the state would still have to, under the new law, would have to show that he's currently still a sexually violent predator. But it doesn't come up automatically? It doesn't. My understanding, excuse me for interrupting, my understanding is it doesn't come up automatically every two years as it did in the old scheme. Now it's But he hasn't been subjected to the new scheme yet, right? I don't believe so. In the new scheme, I thought I read the case law that the new scheme just doesn't apply to those who have been, who were sexually violent predators before. I mean, so they're automatically My understanding was they're not automatically converted to the new law. There has to be a new separate proceeding first. And that might be the case in this situation. So if he's under, if he's in the system now under this 2005 petition, which ironically, the actual petition was filed in 2003 regarding this proceeding, but it took two years to decide it. So as he's walking out the door having this petition being upheld, it seemed as if the people were filing another petition because their two years had expired and they needed to file a new petition for recommitment because he would have necessarily been given credit. I thought he wrote in the record that he also, that they also filed a petition under the new law. And everything just got, everything has just been held in abeyance. That's possible, Your Honor. So what would be, Judge Reinhart asked earlier, what would be the significance if he were to prevail in this proceeding? How would that impact his status? It would appear that perhaps, again, I'm sorry, I'm not prepared better for that question, but presumably perhaps what could happen is that people could file a new petition in a whole new context. And now that they only need one predicate prior, if there's any issue regarding the 68, they certainly have the 1989 petition. But they'd still have to show that he hasn't been cured in 35 years of his diagnosable mental disorder. Of course. I was speaking specifically with regards to the predicates. But absolutely, that wouldn't change. You'd still have to show the dangerousness and the mental illness plus, and then in this case, just the one predicate prior. How old is he today? I think about 73. Seventy-three. When was the last time he had a doctor's report that he's still a danger? I don't have the answer to that question, Your Honor. I'm sorry. Do you? If I may, Your Honor, I suspect that might be because perhaps he's kind of in this no man's land of the system with respect to the fact that if he's waiting for anything to happen, whether he's going to be released or not, based on what happens in this particular case, maybe the people aren't filing any petitions. He's not filing any petitions to get out of there for him. Is there any chance you could work this out as to what should happen to him now, regardless of this? I mean, could any chance you could, instead of him just sitting there through Is there a way you might agree on how this could be brought before a court with doctor's reports as to whether he's dangerous or not, which might result in his release? I mean, suppose he is all right now. You're not going to get to that question for a long time, the way this litigation is going. I think you might both want to see that somehow out of this you could agree on a procedure where the court could determine whether he still has to be kept or doesn't. Wouldn't that be best for everybody? I'm not sure that the people at this stage are in a position to take that approach. However, I understand that while he's in there, surely he must be having doctors evaluate him. Now, that's something that, you know, Mr. Wright can bring up with the people at the district attorney's office. Let me just ask you this. Would you have any objection to our referring this to mediation while we could have decided the case, if it's not resolved, even in another state with maybe even a less reasonable district attorney? I mean, attorney general. We've mediated a death penalty case, and that was resolved by a mediation department. If so, it seems to me that this is not asking you to agree to anything in mediation, but it would seem to be little to lose by the two of you getting together with our mediator and seeing if something practical can be worked out and say this is going to end up like this. I mean, it'll go on forever, and by that time, it'll be moved by the time it's resolved, particularly since any habeas decision we make winds up in the Supreme Court, thanks to the attorney general. All right. Once again, elevated. I'm not in a position, obviously, to say yes or no to that question. That would be up to my superiors. I think that is actually... Okay. Well, we don't really need your consent to do it, so I thought it would be nice. I think that's a question that's better posed, however, Judge Reinhart, to the prosecution in the district attorney's office who's really responsible for trying him on these matters. If there's a pending... I mean, it seems like whatever we do in this one, if there's another pending thing, I mean, I don't even understand why that should be stayed, if it's possible that he's no longer a danger, no longer suffering from a mental disorder. I mean, if the system is working the way it's designed to work, although it doesn't seem to have worked that way in this case. I understand that, Your Honor. I guess what we need to do is really clarify what his status is, and we don't really know that at this point. Is he still under the old system where every two years the people have to file a petition for recommitment, or is he somehow under the new system where it's up to him to file for a petition to be released? Or is he under no system legally, and he's entitled to be released? That remains to be seen. That's another one of the possibilities. I mean, lots of possibilities in this case. Okay, thank you. Thank you, Your Honors. Let me ask you first, do you have any objection to mediation? In principle, no, but I don't hold out much hope for it, merely because if you look at the transcript going back to 2005, in my personal opinion, the evidence was very scant that he posed any danger, and yet the district attorney was adamant that they were going to pursue that route. But you don't know if there's been any more recent medical reports? No, no, I don't. Probably not even the same district attorney eight years later. Pardon me? Probably not even the same district attorney eight years later. Oh, the district attorney has changed. I don't know about the individual deputy district attorney that would be handling the matter, though. I just don't know. What county is this in? Riverside County. Is Coalinga in Riverside County? No, no. Who is that? Jacob. And my apology for earlier, I always get the state hospitals mixed up. Their names sound the same to me. Would it still be in Riverside County, or would it be in? I think that any proceedings on SBP petitions would still be in Riverside County. And right now he is under an indefinite petition, and it doesn't seem like the state's. . . But it has never been adjudicated. As far as I know. I can't say for certain, though. Has he requested whatever you do? It used to be every two years. Now it's up to him to demand it? I think it has to be on the recommendation of the state doctors, and that's problematic because they have an incentive basically to keep them there in order to keep their jobs. They need the people there. As I pointed out in my briefing, there's some really perverse incentives when you get to SBP cases, perverse incentives for Mr. Wright and other people subject to SBP petitions to even make admissions because that's what the doctors want to hear, and those doctors literally hold the keys to their freedom in their hands. So they'll admit to anything. That's no more perverse than in the parole system in general. If you come in and say, I'm sorry, I committed the crime, they say, oh, fine, you're rehabilitated. If you tell them you didn't commit the crime, then you'll stay until you say you did, even if you didn't. But on top of that, in the context of SVPs, I think the general public wants the courts to follow the rule of law when it comes to standard criminal cases, but I don't necessarily think they want that in the case of sexually violent predators. And so there's incentive for the courts to sort of look away and do these kind of abuses, to allow withholding of records like this and to erect collateral estoppel bars without looking at the threshold requirements for even doing it, just bypassing that. And in this case, remember that the trial attorney had objected numerous times and persistently throughout that trial said that she wanted the court to go back and look at those threshold factors, had it actually been litigated, had there been a full and fair hearing on the matter. Suppose we granted the petition or reversed the district court. Wouldn't the state just come back in and... That's my worry, too, that right now they're just going to assert that, well, now we can get them with just one predicate prior. And that's what I was saying earlier. I don't think they can. I think because it has to be instigated immediately after a release from a conviction, that time has long passed. He's not under a conviction. This isn't just subsequent to a conviction. Now, it's been 12 going on 13 years since he last served a sentence. Well, that would have to be litigated in the state courts. I'll leave that for Your Honors to decide. Well, whether the new law would apply to him, how it would apply to him. I mean, I think because of the egregiousness of the miscarriage of justice here, I think Your Honors would be within your authority to correct that. No, no. If we ruled for you, then if the state just picked him up again and said the new law applied and you only need one conviction, that wouldn't be up to us. That would have to go through the whole state court system. But you said pick him up again. My worry is that they're never going to release him. Well, we'll never release him. And that's a concern. It's troubling. Well, okay. There's nothing we could do to, even if we were to agree with you that habeas relief is warranted, there's nothing we could do to stop the state from invoking the new law. Well, I think one of the things, and listen, it wasn't certified by this court, but one of the arguments I raised is that the changes to the SVP, the reducing it to a single predicate prior, and other changes such as the elimination of the reasonable doubt standard, have made this more criminal in nature. And I think the court really should look at that issue because it's, if anything, because of the biases related to any accusation of a sexual predator offense, I think the courts should be affording extra protection, not less than criminal defense, but equivalent if you have more protection than you have in the case of criminal case. Are there any further questions? No. Thank you very much. Thank you. The case just arguably submitted. I think we may be more confused than we were when we started. Thank you.
judges: Reinhardt, Wardlaw, Paez